UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED

2011 JAN 14  P 1: 26

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| SONY ERICSSON MOBILE<br>COMMUNICATIONS AB,<br>a Corporation of Sweden<br>Nya Vattentornet<br>Lund, Sweden SE-22188<br><br>SONY ERICSSON MOBILE<br>COMMUNICATIONS (USA) INC.,<br>a Delaware corporation<br>Terminus 200, Suite 600<br>3333 Piedmont Road, N.E.<br>Atlanta, GA 30305<br><br>     Plaintiffs,<br><br>     v.<br><br>CLEARWIRE CORPORATION,<br>a Delaware Corporation<br>4400 Carillon Point<br>Kirkland, WA 98033<br><br>and<br><br>CLEARWIRE COMMUNICATIONS LLC,<br>a Delaware Limited Liability Company<br>4400 Carillon Point<br>Kirkland, WA 98033<br><br>     Defendants. | Civil Action No. 1:11 CV 48<br>CmH / TCB |

## COMPLAINT

Plaintiffs Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile

Communications (USA) Inc. (collectively, "Sony Ericsson" or "Plaintiff") allege the following

against Defendants Clearwire Corporation and Clearwire Communications LLC (collectively "Clearwire" or "Defendants"):

## INTRODUCTION

1.     This is an action for trademark infringement and related claims arising from Clearwire's use of infringing sphere with swirl logos which are confusingly similar to Sony Ericsson's federally registered sphere with swirl marks, in connection with mobile broadband products and services.  This action is also for copyright infringement arising from Defendants' copying of Sony Ericsson's federally registered, copyrighted design.

2.     Sony Ericsson is a well-established, leading provider of mobile phones, such as smartphones and related accessories.  Sony Ericsson has for years used distinctive, recognized sphere with swirl green and silver/white logos – which are federally registered trademarks – to advertise and brand its products and services.  Sony Ericsson has spent millions of dollars on advertising and sponsorships to create goodwill and build an association with its sphere with swirl marks in the minds of consumers.

3.     Defendants operate a mobile broadband network and sell related products for accessing its network.  The services Defendants provide include home phone, home Internet, and mobile Internet.  Defendants have used infringing sphere with swirl logos, in the same green and silver/white colors as Sony Ericssons' trademarks,  to market and sell their mobile broadband service and products.  Defendants' infringing sphere with swirl logos are confusingly similar to Sony Ericsson's sphere with swirl registered trademarks.

2



| Sony Ericsson's Sphere with Swirl | Defendants' Infringing Sphere with Swirl Logos |
|---|---|

4.     Prior to Defendants' use of their infringing sphere with swirl logos, Sony Ericsson was the only company in the mobile communications business that used a sphere with swirl logo in green and silver/white colors to identify its goods and services.

5.     In late 2009, Sony Ericsson learned that Clearwire had filed trademark applications for a sphere with swirl logo in the same green and silver/white colors that they are using now, with the colors in a reverse image configuration ("Infringing Reverse Image Logo").



| Sony Ericsson's Sphere with Swirl Mark | Defendants' Infringing Reverse Image Logo |
|---|---|

6.     Through opposition proceedings initiated at the United States Trademark Trial and Appeal Board and discussions with Defendants, Defendants agreed to Sony Ericsson's demands and ceased using the Infringing Reverse Image Logo and expressly abandoned their trademark applications.

Although ceasing the use of the Infringing Reverse Image Logo, Defendants continue to use the effectively identical Infringing Sphere with Swirl Logos:

- on complementary products and services;
- in the same markets as Sony Ericsson;

- advertised in the same channels;

- offered for sale to the same consumers; and

- distributed through the same marketing channels (stores, malls and the Internet).

7.      In addition, according to Clearwire's press releases, Defendants' Infringing Sphere with Swirl Logos are poised to be used in the sale of identical mobile phone products. On May 5, 2010, Clearwire announced that it would begin selling smartphones – in direct competition with Sony Ericsson's core product – by year-end.  On November 4, 2010, Clearwire announced a delay, but not cancellation, of its plans to offer smartphones.

8.      Sony Ericsson has branded every phone it has sold worldwide, including the nearly 32 million phones sold in the United States, with its Sphere with Swirl mark.  On information and belief, most phone manufacturers place their trademarks on their phones.

9.      On information and belief, Defendants plan to brand their upcoming smartphones with the Infringing Sphere with Swirl Logo.

 

| Representative use of Sony Ericsson's Sphere with Swirl Mark (on one of its newest smartphones) | Mock up of expected use of Infringing Sphere with Swirl Logo on a smartphone |
| --- | --- |

10.      Defendants' use of the Infringing Sphere with Swirl Logos already is causing a likelihood of confusion in the marketplace.  Use of the Infringing Sphere with Swirl Logo on the

announced smartphone will further exacerbate that confusion. Unless enjoined, Defendants' current and announced conduct will confuse consumers and cause irreparable harm to Sony Ericsson.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b). This Court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

12.    On information and belief, Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendants have purposefully availed themselves of the benefits of doing business within the Commonwealth of Virginia by advertising and providing goods and services to residents of Virginia, and by causing injury to Sony Ericsson within this District. Defendants are also physically present in this District, having corporate offices at 593 Herndon Parkway, Herndon, VA 20170.

13.    Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) in that, upon information and belief, a substantial part of the events giving rise to the claims occurred in this District, and Defendants are residents of this District.

## PARTIES

14.    Sony Ericsson Mobile Communications AB is a corporation organized under the laws of Sweden. It was established in 2001 and is a 50:50 joint venture between Sony Corporation and Telefonaktiebolaget LM Ericsson. Sony Ericsson is a global provider of mobile phones such as smartphones, and related accessories. The products combine powerful technology with innovative applications for mobile communications and entertainment.

15.     Sony Ericsson Mobile Communications (USA) Inc., which is a corporation organized under the laws of Delaware with a principal place of business in Atlanta, Georgia.  It is a wholly owned subsidiary of Sony Ericsson Mobile Communications AB.

16.     Clearwire Corporation is organized under the laws of Delaware.  Clearwire Corporation, through its operating subsidiaries, is a provider of wireless broadband goods and services.  Clearwire markets its 4G goods and services under its own brand name as well as through its wholesale relationships with Sprint, Comcast, Time Warner Cable, Best Buy Co., and Cbeyond.  Strategic investors in Clearwire Corporation include Intel Capital, Comcast, Sprint, Google, Time Warner Cable, and Bright House Networks.

17.     According to Clearwire's website, its mobile broadband service is currently available in __ markets across the United States, including: Atlanta and Milledgeville, Georgia; and Alexandria and Richmond, Virginia.  In addition to its broadband services, Clearwire sells consumer electronics related to broadband access devices, and has announced plans to sell smartphones, designed to allow users to access its mobile broadband network.

18.     Clearwire Communications, LLC, is organized under the laws of Delaware.  Clearwire Communications LLC is an operating subsidiary of Clearwire Corporation and, upon information and belief, oversees day-to-day operations relating to Clear's product offering.

## RELEVANT TECHNOLOGY AND MARKETS

19.     The mobile phone market has developed, and continues to develop, at an extremely rapid pace.  Where cellular telephones that only provided voice service once dominated the market, new smartphones are now commonplace.  Smartphones not only provide users with voice service, but also provide users with mobile access to the Internet and other

popular services, such as texting and social networking for communication and entertainment purposes.

20.     At the same time, mobile broadband has expanded greatly in the United States. Broadband Internet allows users to access the Internet at high speeds.  Providers of broadband Internet generally offer high speed data packages as well as voice services over Internet protocol ("VOIP").  Mobile broadband allows users to access the Internet at broadband speeds from anywhere within the service provider's coverage area.  Mobile broadband access devices are products that connect to a user's phone, mobile phone, and/or computer (whether plugged in or wirelessly) to allow the user to access the mobile broadband network.

21.     The markets for traditional mobile phone service and mobile broadband service are converging rapidly.  Both smartphones and mobile broadband access devices require high speed (3G and 4G) wireless networks to provide services to the end user.  The 3G and 4G networks are now capable of handling both voice services and mobile broadband services.

22.     The functionality of mobile access devices (smartphones and mobile broadband access devices) is converging as well.  Smartphones and mobile broadband access devices can access high speed networks and allow users to send and receive information over the networks at broadband speeds.  In addition, the latest smartphones, like mobile broadband access devices, have the ability either to plug into a computer or to act as a WiFi hot spot to provide a user with access to a mobile broadband network.

23.     The manner in which mobile access devices and their associated services are sold are connected.  Mobile access devices are usually sold along with a service plan in a package deal.  Co-branding agreements between manufacturers and service providers are prevalent in the

marketplace and allow the co-branding of mobile access devices.  Many mobile access devices

bear the trademarks of both the product manufacturer and the service provider.

24.     Sony Ericsson has been a leader for many years in the mobile phone market,

creating and selling award winning mobile phones such as smartphones with superior

functionality and related accessories.  As detailed below, Sony Ericsson's products are branded

and advertised using Sony Ericsson's distinctive, recognized, and federally registered sphere

with swirl Marks.

25.     Sony Ericsson sells its phones online and through brick-and-mortar retail

locations, including Best Buy and Radio Shack.  Sony Ericsson had over $2.4 billion dollars

worth of global sales in the third quarter of 2010, and has sold nearly 32 million phones in the

United States alone.

26.     Due to their superior design and performance, Sony Ericsson's products have

received numerous awards in the United States and abroad, including but not limited to the:

Telecom Xperience Accessory Awards – Most Innovative Accessory and Best Experience

Overall 2011 (LiveView™); EISA Best Product Award – European Mobile Phone 2010-2011

(Xperia™ X10 mini); 2010 Red Dot Product Design Award (Xperia™ X10 mini); GSM

Association Global Mobile Award (Best Handset 2008), (3GSM Handset of the Year – 2007);

Mobile Awards (Manufacturer of the Year Handset of the Year – 2007); Mobile Choice Awards

(Best Music Phone Best Camera Phone – 2007), (Manufacturer of the Year Phone of the Year

Reader's Dream Phone of the Year Music Phone of the Year – 2006), and 2007 Computer

Shopper Awards (Best Handset).

27.     Clearwire purports to operate the largest 4G network in the United States,

providing mobile broadband goods and services to 62 markets covering 82 million people

throughout the country.  Clearwire represents that its 4G network will reach up to 120 million people by the end of 2010.

28.     While Clearwire has not yet entered the mobile phone market, it is growing quickly and is poised to offer mobile phones to its rapidly increasing customer base.  Clearwire claims to have 2.84 million current subscribers, up 402% from the third quarter in 2009, and expects to have over 4 million subscribers by the end of 2010.  Clearwire boasts having earned $147 million in revenues in the third quarter in 2010, up 114% compared to the third quarter in 2009.

29.     In addition to mobile broadband service, Clearwire sells consumer electronic devices allowing access to its mobile broadband network—including announced plans to begin selling smartphones—branded, marketed, and sold with the infringing logos discussed below.  Clearwire boasts having earned $147 million in revenues in the third quarter in 2010, up 114% compared to the third quarter in 2009.

30.     Like Sony Ericsson, Clearwire sells its products and services online and through brick-and-mortar stores.  Clearwire operates its own stores and, like Sony Ericsson, sells products and services through consumer electronics retailers such as Radio Shack and Best Buy.  Upon information and belief, Clearwire will sell its announced smartphones through these same channels in direct competition with Sony Ericsson.

31.     While Sony Ericsson welcomes competition on the merits from Clearwire, Clearwire's use of logos that are strikingly and confusingly similar to Sony Ericsson's recognized, federally registered logos is illegal and should be enjoined.

## SONY ERICSSON MARKS

32.     Sony Ericsson owns several federally registered trademarks and one pending

mark ("Marks") for its sphere with swirl logo in the mobile market.  The goods and services

connected with these registered Marks (attached hereto as Exhibit A) are broad, covering not

only the phones, but related features, functionality, and accessories.

| MARK[1] | FILING DATE | DATE OF FIRST USE IN INTERNATIONAL CLASS 9 (at least as early as) | REG. OR SERIAL NO. |
|---|---|---|---|
|  | 1/14/08 | January, 2002 | Reg. No. 3,690,610 |
|  | 4/20/07 | October, 2001 | Reg. No. 3,347,926 |
|  | 11/21/06 | August, 2006 | Reg. No. 3,289,672 |
|  | 6/10/09 | Nationwide rights will accrue from filing date of 6/10/09 once registered | Serial No. 77/756,438 |
|  Side view of the mark on products. | 1/17/08 | January, 2003 | Reg. No. 3,620,348 |

33.     Sony Ericsson has used its Marks extensively in commerce for many years.  It has invested heavily in advertising and promoting its Marks and related products over the years, including spending approximately $40 million USD in the past two years alone.  Sony Ericsson advertises its mobile phones and related products through television, radio, in store collateral advertising displays, direct mail, brochures, handouts and via the Internet, including through its own website, through banner ads, through keywords purchased from search engines such as Yahoo, Google, and MSN, through social media such as Twitter and Facebook.

34.     Since 2005, Sony Ericsson has also advertised its products through major event sponsorship such as the "Sony Ericsson Open" http://www.sonyericssonopen.com/), an annual tennis tournament held in Miami, Florida that draws top ranked tennis players from around the world.

35.     As a result of its significant advertising, strong sales, and superior products, Sony Ericsson has built substantial consumer goodwill associated with its Marks worldwide.

36.     Sony Ericsson actively polices its brands worldwide.  It has filed numerous opposition proceedings, including challenges before the United States Trademark Trial and Appeals Board ("TTAB") to challenge Defendants' attempts to register confusingly similar logos.  Sony Ericsson has also sent cease and desist letters to infringing users in an effort to protect its Marks.

## CLEARWIRE'S INFRINGING MARKS

37.     In our about October 2009, Sony Ericsson became aware of Clearwire's intent-to-use applications (a trademark application for a mark which has not yet been used by the applicant) with the United States Patent and Trademark Office for marks that contained the

---

[1] As pictured in the records contained on the United States Patent and Trademark Office's website.

following infringing sphere with swirl mark ("Infringing Mark 1"):



38.     Around the same time (October 2009), Sony Ericsson learned that Clearwire was using a similar mark in connection with the sale of Clearwire's products and services.  This mark is depicted below ("Infringing Mark 2"):



39.     Clearwire has used in commerce the marks depicted above as the source identifier for its mobile broadband service as well as its mobile broadband access devices.

40.     On or about January 2010, Sony Ericsson filed oppositions with the TTAB challenging Clearwire's intent-to-use applications referenced above.  Sony Ericsson also initiated discussions with Defendants in a good faith attempt to resolve the matters with Defendants.

41.     During the course of these discussions, and without notice to Sony Ericsson, on or about May 5, 2010, Clearwire issued a press release stating, among other things, Clearwire's intent to sell smartphones, Sony Ericsson's core product line.

42.     Two months later, in or about July 2010, Sony Ericsson learned that Defendants began using the following additional logo in connection with the sale of Defendants' products and services, and that the logo would also be used on Defendants' upcoming line of smartphones ("Infringing Mark 3"):



43.     Discussions expanded to cover Clearwire's use of Infringing Mark 3.  The

discussions continued between July 2010 and the beginning of October 2010, during which time

the parties made progress.  In fact, Clearwire ultimately agreed to permanently stop using

Infringing Mark 1, which is effectively identical to Infringing Marks 2 and 3, with the inversed..

44.     In or about October 2010, as discussions were on-going, Defendants again

without advance notice to Sony Ericsson, suddenly began using the following green sphere mark

("Infringing Mark 4"), which is strikingly similar to Sony Ericsson's Marks and which

Clearwire, upon information and belief, intends to now use in connection with its upcoming

smartphone line in direct competition with Sony Ericsson:



45.     Upon information and belief, Clearwire's Infringing Mark 2, Infringing Mark 3,

and Infringing Mark 4 (the "Infringing Marks") are currently being used by Defendants on or in

relation to Defendants' mobile broadband access devices and to identify Clearwire's mobile

broadband services.

46.     Clearwire's actions over time—culminating with the introduction of Infringing

Mark 4 into the marketplace—clearly demonstrate that Clearwire has endeavored to create marks

that are confusingly similar to Sony Ericsson's Marks.  Defendants' use of substantially identical

Infringing Sphere with Swirl Marks in connection with goods and services related to those sold by Sony Ericsson is likely to cause consumer confusion, infringes upon Sony Ericsson's trademarks, constitutes unfair competition, and copyright infringement.

**COUNT I**
**LANHAM ACT**
**TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**

47.    Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

48.    Defendants' conduct constitutes trademark infringement of Sony Ericsson's registered Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

49.    Defendants' Infringing Marks are confusingly similar to Sony Ericsson's registered Marks.

50.    Defendants are using the Infringing Marks in interstate commerce by advertising, offering for sale, and selling goods and services bearing the Infringing Marks.

51.    The goods and services sold by Defendants bearing the Infringing Marks are substantially related to goods and services to those sold by Sony Ericsson.  Defendants' use of the Infringing Marks on these goods and services is likely to cause confusion or to cause mistake or to deceive as to the origin, sponsorship or affiliation of the services advertised and sold by Defendants.

52.    Sony Ericsson has no control over the quality of services offered by Defendants under the confusingly similar marks and, as a result, Sony Ericsson's valuable goodwill with respect to its Marks is at the mercy of the Defendants.

53.    Defendants are directly and contributorily liable for infringement of Sony Ericsson's registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §

1114.

54.    Defendants' conduct has caused and, unless restrained by the Court, will continue to cause irreparable injury to Sony Ericsson.

55.    Defendants' conduct has damaged Sony Ericsson in an amount to be determined at trial.

56.    Upon information and belief, Defendants' aforesaid infringing conduct has been willful, wanton, and malicious and done with the intent to deceive.

57.    As a result of Defendants' wrongful acts, Sony Ericsson is entitled to an award of treble its actual damages; Defendants' profits; and its reasonable attorneys' fees and costs.

58.    Sony Ericsson has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' infringing conduct.

## COUNT II
## LANHAM ACT
## UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

59.    Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

60.    Defendants' conduct constitutes unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

61.    Specifically, the Defendants have used the Infringing Marks in connection with mobile access devices and services in a way that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, sponsorship, or association of Defendants' services with Sony Ericsson's Marks and the goods and services associated therewith.

62.    Defendants are using the Infringing Marks in interstate commerce by advertising, offering for sale, and selling goods and services bearing the Infringing Marks.

63.     Upon information and belief, Defendants' activities have deceived, or are likely to deceive, a substantial portion of the purchasing public, and such deception is material in that it is likely to influence the buying decisions of the purchasing public.

64.     By reason of Defendants' conduct as alleged above, Sony Ericsson has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained.

65.     Defendants are liable for unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

66.     Defendants' conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Sony Ericsson.

67.     Defendants' conduct has damaged Sony Ericsson in an amount to be determined at trial.

68.     Upon information and belief, Defendants' aforesaid infringing conduct has been willful, wanton, and malicious and done with the intent to deceive.

33.     As a result of Defendants' wrongful acts, Sony Ericsson is entitled to an award of treble its actual damages; Defendants' profits; and its reasonable attorneys' fees and costs.

69.     Sony Ericsson has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

## COUNT III
## GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT/
## STATUTORY AND COMMON LAW
## UNFAIR COMPETITION

70.     Sony Ericsson incorporates by reference and realleges each and every allegation of the Paragraphs above.

71.     Defendants' use of the Infringing Marks creates the impression to a consumer that

Sony Ericsson and Defendants are somehow affiliated and is likely to confuse consumers into purchasing Defendants' goods and/or services when they were instead seeking those of Sony Ericsson.

72.     The resemblance between the Infringing Marks and Sony Ericsson's Marks is so close that it is likely to confuse a prospective buyer or customer exercising ordinary caution in his or her dealings.

73.     Defendants' use of the Infringing Marks is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of the services advertised and sold by Defendants.

74.     Defendants' use of the Infringing Marks is likely to cause confusion or misunderstanding as to affiliation, connection, or association with or certification by Sony Ericsson.

75.     Defendants' use of the Infringing Marks represents that Defendants have a sponsorship, approval, affiliation, or connection with Sony Ericsson, which they do not have.

76.     Defendants' conduct violates the Uniform Deceptive Trade Practices Act under Georgia state law, O.C.G.A. §§ 10-1-370 through 10-1-375 ("UDTPA").

77.     Upon information and belief Defendants have willfully engaged in the above-mentioned practices, knowing them to be deceptive and intending to deceive and mislead the public.

78.     Defendants' conduct constitutes direct trademark infringement and unfair competition under Georgia common law and violates Georgia Code § 23-2-55.

79.     Defendants' conduct has damaged Sony Ericsson in an amount to be determined at trial.

80.     Defendants' conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Sony Ericsson within the State of Georgia as Sony Ericsson's wholly-owned U.S. subsidiary, Sony Ericsson Mobile Communications (USA) Inc., has its principal place of business in Atlanta, Georgia. Sony Ericsson has no adequate remedy at law and is entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

### COUNT IV
### COPYRIGHT INFRINGEMENT
#### (17 U.S.C. §§ 101 et seq.)

81.     Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

82.     Sony Ericsson owns all rights and title in the copyright for its sphere with swirl logo (the "Sony Ericsson Sphere with Swirl Artwork").



83.     Sony Ericsson's Sony Ericsson Sphere with Swirl Artwork is a wholly original work that constitutes copyrightable subject matter under the laws of the United States. Sony Ericsson has complied in all respects with the U.S. Copyright Act of 1976, 28 U.S.C.§ 101 et seq., and has a federally registered copyright, VA 1-406-813, for its Sony Ericsson Sphere with Swirl Artwork. A copy of the registration is attached hereto as Exhibit A.

84.     At all times relevant to this action, Defendants have had access to the Sony Ericsson Sphere with Swirl Artwork, which has appeared on advertising at sponsored events, television, the Internet, and industry trade shows.

85.     The following artwork used by the Defendants is substantially similar or identical to Sony Ericsson's copyrighted Sony Ericsson Sphere with Swirl Artwork.

| Sony Ericsson Sphere with Swirl Artwork | Defendants' infringing logo |
|---|---|
|  |  |
|  |  |

86.    Defendants have and will continue to infringe Sony Ericsson's copyright relating to the Sony Ericsson Sphere with Swirl Artwork by creating substantially similar copies and distributing the infringing copies in the marketplace.

87.    Defendants' creation of a logo that is substantially similar to Sony Ericsson's copyrighted work was done in violation of the exclusive rights of Sony Ericsson as the copyright holder.  No permission, license or any other authorization has been provided to Defendants to create and distribute copies of Sony Ericsson's copyrighted artwork.

88.    Sony Ericsson has been and continues to be irreparably harmed by Defendants' ongoing copyright infringements, entitling Sony Ericsson to injunctive relief.

89.    Upon information and belief, Defendants' ongoing infringements of Sony Ericsson's copyrights are willful, knowing and malicious.

90.    Sony Ericsson has sustained damages by Defendants' past copyright infringements and seeks monetary damages as a result.

91.    Upon information and belief, Sony Ericsson's copyright registration pre-dates upon when the infringement commenced.

92.    Sony Ericsson seeks at its option actual damages or statutory damages to the full

extent provided by law and its costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, Sony Ericsson prays that the Court enter the following relief:

A.     Adjudge that Sony Ericsson's Marks have been infringed as a direct and proximate result of the acts of Defendants as set forth in this Complaint, in violation of Sony Ericsson's rights under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

B.     Adjudge that the Defendants have violated the Uniform Deceptive Trade Practices Act under Georgia state law, O.C.G.A. §§ 10-1-370 through 10-1-375 and have engaged in unfair competition in violation of Georgia Code § 23-2-55 and the Common Law.

C.     Adjudge that Sony Ericsson's copyrighted work has been infringed as a direct and proximate result of the acts of Defendants as set forth in this Complaint, in violation of Sony Ericsson's rights under the Copyright Act, 17 U.S.C. § 101 et seq.;

D.     Order that the Defendants and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns of Defendants, and all persons in active concert or participation therewith, be preliminarily and permanently enjoined from committing any further acts of trademark infringement, copyright infringement and unfair competition, and from using the Sony Ericsson Marks, the Infringing Marks, or any mark that is likely to cause consumer confusion and unfair competition with Sony Ericsson's Marks;

E.     Award Sony Ericsson its actual damages, trebled;

F.     Award Sony Ericsson Defendants' profits;

G.      Award Sony Ericsson statutory damages of not less than the maximum amount of $150,000.00 for Defendants' Copyright violation;

H.      Award Sony Ericsson pre-judgment and post-judgment interest;

I.      Award Sony Ericsson's attorneys' fees, taxable costs and disbursements incurred in this action;

J.      Order all other relief as the Court deems just and proper.

## JURY DEMAND

**Sony Ericsson respectfully demands a trial by jury of all matters to which it is entitled to a trial by jury pursuant to Fed. R. Civ. P. 38.**

Respectfully submitted,

Dated: January 14, 2011

By: _____

Roger Colaizzi, Va. Bar #32651
Christopher Scott Crook, Va. Bar #76636
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
Telephone (202) 344-4000
Fax (202) 344-8300
Email: racolaizzi@venable.com
           cscrook@venable.com

*Attorneys for Sony Ericsson Mobile*
*Communications AB and Sony Ericsson Mobile*
*Communications (USA) Inc.*