**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

_____

| | |
|---|---|
| **SONY ERICSSON MOBILE** | ) |
| **COMMUNICATIONS AB,** | ) |
| **a Corporation of Sweden** | ) |
| **Nya Vattentornet** | ) |
| **Lund, Sweden SE-22188** | ) |
| | ) |
| **and** | ) |
| | ) |
| **SONY ERICSSON MOBILE** | ) |
| **COMMUNICATIONS (USA) INC.,** | ) |
| **a Delaware corporation** | ) |
| **Terminus 200, Suite 600** | ) |
| **3333 Piedmont Road, N.E.** | ) |
| **Atlanta, GA 30305** | ) |
| | )   **Civil Action No.** |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CLEARWIRE CORPORATION,** | ) |
| **a Delaware Corporation** | ) |
| **4400 Carillon Point** | ) |
| **Kirkland, WA 98033** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CLEARWIRE COMMUNICATIONS LLC,** | ) |
| **a Delaware Limited Liability Company** | ) |
| **4400 Carillon Point** | ) |
| **Kirkland, WA 98033** | ) |
| | ) |
| **Defendants.** | ) |

_____)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile

Communications (USA), Inc. (collectively, "Sony Ericsson" or "Plaintiffs") bring this Motion

for Preliminary Injunction against Defendants Clearwire Corporation and Clearwire

Communications LLC (collectively "Clearwire" or "Defendants") for Defendants' use of infringing sphere with swirl logos ("Infringing Sphere with Swirl Logos") to market and sell their mobile broadband service and products.  Defendants' logos are confusingly similar to Sony Ericsson's federally registered sphere with swirl mark ("Sphere with Swirl Mark").

Sony Ericsson began using its Sphere with Swirl Mark in 2001 and has invested tremendous resources promoting it in connection with its own mobile phone products and services.  Sony Ericsson's Sphere with Swirl Mark has become a well known and respected trademark among consumers.  Sony Ericsson's Sphere with Swirl Mark and Defendants' Infringing Sphere with Swirl Logos are depicted below.



| Sony Ericsson's Sphere with Swirl Mark | Defendants' Infringing Sphere with Swirl Logos |

Prior to Defendants' use of their Infringing Sphere with Swirl Logos, Sony Ericsson was the only company in the mobile communications business that used a sphere with swirl logo in green and silver/white/gray colors to identify its goods and services.  In late 2009, through a trademark registry watch service, Sony Ericsson learned that Defendants had filed trademark applications for a sphere with swirl logo in the same green and silver/white/gray colors that they are using now, with the colors in a reverse image configuration ("Infringing Reverse Image Logo").

| | |
|---|---|
|  |  |
| Sony Ericsson's Sphere with Swirl Mark | Defendants' Infringing Reverse Image Logo |

Sony Ericsson quickly initiated opposition proceedings at the United States Trademark Trial and Appeal Board, and engaged in discussions with Defendants insisting they cease use of the Infringing Reverse Image Logo and expressly abandon their corresponding trademark applications.  Ultimately, Defendants agreed to Sony Ericsson's demands and ceased using the Infringing Reverse Image Logo and expressly abandoned their trademark applications.

Although ceasing the use of the Infringing Reverse Image Logo, Defendants continue to use their other Infringing Sphere with Swirl Logos with identical color combinations:

- on complementary products and services;

- in the same markets as Sony Ericsson;

- in the same advertising channels;

- on offers for sale to the same consumers; and

- through the same marketing channels (stores, malls and the Internet).

In addition, according to Defendants' press releases, Defendants are poised to use their Infringing Sphere with Swirl Logos in the sale of identical mobile phone products.  On May 5, 2010, Defendants announced that they would begin selling smartphones – in direct competition with Sony Ericsson's core product – by year-end.  On November 4, 2010, Defendants announced a delay, but not cancellation, of their plans to offer smartphones.

Sony Ericsson has branded every phone it has sold worldwide, including the nearly 32 million phones sold in the United States, with its Sphere with Swirl Mark.  Most phone

manufacturers place their trademarks on their phones.  Given this practice in the mobile phone

market, and based upon Defendants' conduct to date, Sony Ericsson fully expects Defendants to

brand their upcoming smartphones with the Infringing Sphere with Swirl Logos.



| | | |
|---|---|---|
| Representative use of Sony Ericsson's Sphere with Swirl Mark. | Mock up of smartphone with expected use of Infringing Sphere with Swirl Logo. Mark shown bigger than expected use. | Representative use of third party marks on smartphone. |

Defendants' use of the Infringing Sphere with Swirl Logos already is causing a likelihood

of confusion in the marketplace.  Use of the Infringing Sphere with Swirl Logos on Defendants'

announced smartphone will further exacerbate that confusion.  Unless enjoined, Defendants'

current and announced conduct will confuse consumers and cause irreparable harm to Sony

Ericsson.

## FACTUAL BACKGROUND

### Sony Ericsson

Sony Ericsson is a corporation organized under the laws of Sweden with a wholly-owned

United States subsidiary, Sony Ericsson Mobile Communications (USA) Inc., based in Atlanta,

Georgia.  Sony Ericsson was established in 2001 and is a 50/50 joint venture of two well known

companies, Sony Corporation and Telefonaktiebolaget LM Ericsson.

Sony Ericsson is a global provider of mobile phones such as smartphones and related accessories and services.  The products combine powerful technology with innovative applications for mobile communications and entertainment.  Sony Ericsson's products are distributed throughout the world, including the United States.  Sony Ericsson had over $2.4 billion dollars worth of global sales in the third quarter of 2010, and has sold approximately 31 million phones in the United States since inception.  *See* Declaration of Justin Pierce ("Pierce Decl."), attached hereto as Exhibit 1, ¶ 7.

Sony Ericsson's products have also received numerous awards in the United States and abroad, including but not limited to the: Telecom Xperience Accessory Awards – Most Innovative Accessory and Best Experience Overall 2011 (LiveView™); EISA Best Product Award – European Mobile Phone 2010-2011 (Xperia™ X10 mini); 2010 Red Dot Product Design Award (Xperia™ X10 mini); GSM Association Global Mobile Award (Best Handset - 2008) (3GSM Handset of the Year – 2007); the Mobile Awards (Manufacturer of the Year; Handset of the Year – 2007); the Mobile Choice Awards (Best Music Phone, Best Camera Phone – 2007) (Manufacturer of the Year, Phone of the Year, Reader's Dream Phone of the Year, Music Phone of the Year – 2006); and the 2007 Computer Shopper Awards (Best Handset).  *See* Pierce Decl. ¶ 10.

Sony Ericsson invests significant resources in developing and promoting the trademarks associated with its goods and services.  Keeping with that strategy, in 2001, Sony Ericsson developed its house trademark and logo referred to herein as the Sony Ericsson "Sphere with Swirl Mark," which is displayed on all of its mobile phones including smartphones, and related accessories:



Sony Ericsson has invested heavily in advertising and promoting its trademarks and related products over the years, including spending nearly $26 million for advertising in 2009 alone.  Pierce Decl. ¶ 4.  A significant number of Sony Ericsson's advertisements not only include the Sphere with Swirl Mark, but also draw the viewer's attention specifically to the mark by incorporating it into the message, as indicated below, thereby further strengthening commercial recognition of this already inherently distinctive mark.



Sony Ericsson advertises its goods through television, radio, in store collateral advertising displays, direct mail, brochures, handouts, and on the Internet, including through its own website, through banner ads, through keywords purchased from search engines such as Yahoo, Google, and MSN, and through social media such as Twitter and Facebook.  *See* Pierce Decl. ¶ 5 and Exhibit A thereto for examples of advertising.

A notable example of Sony Ericsson's promotional activities is its sponsorship since 2005 of the "Sony Ericsson Open," an annual tennis tournament whose participants include the best tennis players in the world.  *See* www.sonyericssonopen.com.  In 2010, the tournament set

an attendance record with a total of 312,386 persons visiting the tournament.  *See*

http://www.sonyericssonopen.com/News/Tennis/2010/Tournament-Week-2/Miami-Sunday-

Record-Year.aspx.  The tournament was also featured on "The Today Show," "Entertainment

Tonight" and the popular MSNBC morning show "Morning Joe."  *Id.*

     Both the men's and women's finals were broadcast nationally on CBS.  The tournament

received a record 63 hours of domestic television coverage and recorded over 2400 hours of

television coverage globally on other networks.  *Id*.  Examples of the prominent use of the Sony

Ericsson Sphere with Swirl Mark at the tournament include court-side advertisements, booth

displays, banners, signs, and Internet advertisements.  *See* Pierce Decl. ¶ 6 and exemplars

attached thereto as Exhibit B.

     Sony Ericsson's heavy investment in advertising has resulted in substantial customer

recognition and goodwill, evidenced by a large number of sales of mobile phones such as

smartphones and mobile phone accessories.  Since the joint venture between Sony and Ericsson

in 2001, Sony Ericsson has sold approximately 31 million mobile phones in the United States.

*See* Pierce Decl. ¶ 7.  Through retail stores, such as Best Buy and Radio Shack, and its online

stores, Sony Ericsson sold over 3.5 million mobile phones in the United States in 2009-2010

alone, all of which are branded with the Sony Ericsson Sphere with Swirl Mark.  *See* Pierce

Decl. ¶¶ 5, 8 and Exhibit C thereto for exemplars.  Since 2003, Sony Ericsson has sold over 18.5

million mobile phone accessories in the United States, all of which also bear the Sony Ericsson

Sphere with Swirl Mark.  *See* Pierce Decl. ¶ 9 and Exhibit D thereto for exemplars.  These

numbers evidence the substantial consumer goodwill associated with the Sony Ericsson Sphere

with Swirl Mark.

     Prior to Defendants' infringement, Sony Ericsson was the only company in the mobile

communications business that used a sphere with swirl logo in green and silver/white/gray colors to identify its goods and services.

Given the value of Sony Ericsson's trademark rights, principally its Sphere with Swirl Mark, it is no surprise that Sony Ericsson has been vigilant in actively policing its marks on a worldwide basis. *See* Pierce Decl. ¶ 11. This includes three opposition proceedings brought before the United States Trademark Trial and Appeal Board ("TTAB") against Defendants. *See* Pierce Decl. ¶ 11.

**<u>Clearwire</u>**

Defendants are Washington companies organized under the laws of Delaware. They offer mobile broadband Internet goods and services.[1] Defendants were was founded in late 2003 and launched its first market for mobile broadband in August 2004. *See* Clearwire LLC 2007 10-K Report, Exhibit 2, at 6. [2]

By December 31, 2007, Clearwire's network in the United States was deployed in 46 markets and covered an estimated 13.6 million people. *Id.* As of December, 2010, Clearwire provided its mobile broadband service through a 4G network that spans 71 markets covering 110 million people. *See* December 30, 2010 Clearwire press release, attached hereto at Exhibit 3.[3]

In addition to its broadband services, Defendants also sell electronic consumer products designed to allow users to access its mobile broadband network. *See* Clearwire consumer website, devices page, at Exhibit 4.[4]

In addition to the above goods and services, on or about May 5, 2010, Defendants announced that they would begin selling smartphones – in direct competition with Sony

---

[1] Clearwire's Websites http://www.clearwire.com and http://www.clear.com  (last visited January 13, 2011).
[2] Also at http://library.corporate-ir.net/library/19/198/198722/items/295101/CLEAR07AR.pdf (last visited January 13, 2011).
[3] Also at http://investors.clearwire.com/phoenix.zhtml?c=214419&p=irol-newsArticle&ID=1511390&highlight=
[4] Also at http://www.clear.com/devices. (last visited January 13, 2011).

Ericsson's core product – by year-end.  *See* Clearwire Press Release, dated May 5, 2010, attached hereto as Exhibit 5.[5]  On November 4, 2010, Clearwire announced a delay, but not cancellation, of their plans to offer smartphones.  *See* Clearwire Press Release, dated November 4, 2010, Exhibit 6. [6]

Clearwire's services and products are sold in multiple locations throughout the United States, including Clearwire's own retail stores, and other retail stores such as Radio Shack and Best Buy, where Sony Ericsson Sphere with Swirl marked products are also sold.  *See* Declaration of Sarah Hendon ("Hendon Decl.") attached hereto as Exhibit 7, ¶ 4, 7.

Defendants have launched a large marketing campaign promoting the Clearwire Infringing Sphere with Swirl Logos in connection with its products and services.  The Clearwire Infringing Sphere with Swirl Logos have appeared in television campaigns, advertisements, and high traffic locations throughout the country.  *See* Hendon Decl. ¶ 8 and attachments; Clearwire Advertisements attached hereto at Exhibit 8.  Defendants have selected high traffic areas to display their marketing materials throughout the United States, including for example, Washington, D.C.'s Metro system.  *See* Pierce Decl. ¶ 14, Exhibit F.

As a result of their marketing efforts, Defendants had 2.84 million subscribers by the close of the third quarter of 2010, which is up 402% from the third quarter of 2009.  At the time of their third quarter report, Defendants expected to have over 4 million subscribers by the end of 2010.  *See* November 4, 2010 Clearwire press release, attached hereto at Exhibit 6.[7]  The high number of subscribers has translated into significant revenues for Clearwire.  *Id*.  Clearwire made

---

[5] Also at http://investors.clearwire.com/phoenix.zhtml?c=214419&p=irol-newsArticle&ID=1422881&highlight= (last visited January 13, 2011).
[6] Also at http://investors.clearwire.com/phoenix.zhtml?c=214419&p=irol-newsArticle&ID=1492262&highlight= (last visited January 13, 2011).
[7] Also at http://newsroom.clearwire.com/phoenix.zhtml?c=214419&p=irol-newsArticle&ID=1492262&highlight= (last visited January 13, 2011).

$147 million dollars in revenue in the third quarter of 2010, up 114% compared to the third quarter of 2009.  *Id.*

**Infringing Activity**

Near the end of 2009, through a trademark registry watch service, Sony Ericsson learned that Clearwire had filed trademark applications for the Infringing Reverse Image Logo, a sphere with swirl logo in the same green and silver/white/gray colors that is confusingly similar to Sony Ericsson's registered Sphere with Swirl Mark.  *See* Pierce Decl. ¶ 12.  In response, Sony Ericsson took swift action to protect its mark and prevent consumer confusion, filing opposition proceedings before the TTAB challenging the Clearwire trademark applications.  *See* Complaint, Ex. A.  Sony Ericsson also engaged in discussions with Defendants insisting they cease use of the infringing logo and expressly abandon their corresponding trademark applications.  *See* Pierce Decl. ¶ 13.

Defendants ultimately agreed to Sony Ericsson's demands and ceased using the Infringing Reverse Image Logo that was the subject of the trademark applications and expressly abandoned the trademark applications.

Defendants, however, continued to use the effectively identical Infringing Sphere with Swirl Logos to market its mobile broadband service as well as its mobile broadband consumer products.  *Id.*

Defendants' Infringing Sphere with Swirl Logo is nearly identical to the sphere with swirl logo that Defendants agreed to cease using permanently:

| Defendants ceased using this Infringing Reverse Image Logo | Defendants began using this infringing sphere with swirl logo in October 2010. |
|---|---|
|  |  |

Except for inversing the colors, the two marks are conceptually the same, and the consumer reaction would likely be substantially similar.

While some of Defendants' devices are currently branded with older infringing logos, *see* Clearwire consumer website, devices page, at Ex. 4[8], Defendants are expected to brand, market, and sell their products with the Infringing Sphere with Swirl Logo, as that logo already is being used on brochures and in advertising.  Further, it is anticipated that Defendants' Infringing Sphere with Swirl Logo also will be used in connection with Defendants' mobile smartphones when they launch.

Defendants' Infringing Sphere with Swirl Logo uses the same three-dimensional design elements as the Sony Ericsson Sphere with Swirl Mark, including a nearly identical shade of green with silver/chrome/grey accents and shading.  As discussed below, these similarities, combined with the similarity of the goods and services, and channels of trade make it highly likely that Defendants' use of its Infringing Sphere with Swirl Logo will cause consumer confusion and irreparably harm Sony Ericsson.

## LEGAL STANDARD

Sony Ericsson is entitled to a preliminary injunction if it can demonstrate: "1) that it is likely to succeed on the merits; 2) that it is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that an injunction is in

---

[8] Also at http://www.clear.com/devices (last visited January 13, 2011).

the public interest." *Allegra Network LLC v. Reeder*, No. 1:09-cv-912, 2009 WL 3734288, at *2

(E.D. Va. Nov. 4, 2009) (*citing Real Truth About Obama v. Fed. Election Comm'n,* 575 F.3d

342, 347 (4th Cir. 2009), *vacated on other grounds by Real Truth About Obama, Inc. v. FEC*,

607 F.3d 355 (4th Cir. 2010)).

## ARGUMENT

**I.      SONY ERICSSON IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIM
        FOR TRADEMARK INFRINGEMENT.**

To prevail on its trademark infringement claim, Sony Ericsson must demonstrate: "(1)

evidence of ownership of a valid and protectable mark; (2) evidence of the use of the mark by an

infringer; and (3) evidence of a likelihood of confusion." *H. Jay Spiegel & Associates, P.C. v.

Spiegel*, 652 F. Supp. 2d 630, 637 (E.D. Va. 2008) (*citing Lone Star Steakhouse & Saloon v.

Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) (affirming district court's grant of

motion for summary judgment in favor of trademark owner)).

**A.      Sony Ericsson Owns Valid and Protectable Marks.**

Sony Ericsson owns four U.S. federal trademark registrations and one application for the

Sony Ericsson Sphere with Swirl Mark for use in connection with, among other things, cellular

or mobile phones and related goods and services.  *See* Pierce Decl. ¶ 3.

| MARK[9] | FILING DATE | DATE OF FIRST USE IN INTERNATIONAL CLASS 9 (at least as early as) | REG. OR SERIAL NO. |
|---|---|---|---|
|  | 1/14/08 | January, 2002 | Reg. No. 3,690,610 |

---

[9]  As pictured in the records contained on the United States Patent and Trademark Office's website.

| | | | |
|---|---|---|---|
| | 4/20/07 | October, 2001 | Reg. No. 3,347,926 |
| | 11/21/06 | August, 2006 | Reg. No. 3,289,672 |
| | 6/10/09 | Nationwide rights will accrue from filing date of 6/10/09 once registered | Serial No. 77/756,438 |
| Side view of the mark on products. | 1/17/08 | January, 2003 | Reg. No. 3,620,348 |

By statute, federal trademark registrations "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration...."  15 U.S.C. § 1115.

Thus, because Sony Ericsson maintains federally registered trademarks for its Sphere with Swirl Marks, Sony Ericsson owns valid and protectable marks to satisfy the first element of the infringement test.

**B.     Defendants are Using Infringing Sphere with Swirl Logos Nationwide.**

The evidence is also indisputable that Defendants are using an infringing mark in nationwide commerce.  Defendants have utilized an aggressive, visual advertising campaign

using their Infringing Sphere with Swirl Logo in major cities throughout the country.  *See, e.g.,*
Price Decl. ¶ 14.  Defendants' Infringing Sphere with Swirl Logos have been seen on television,
on the Internet, on Defendants' brochures, in Defendants' stores, and in major retailers
nationwide such as Best Buy and Radio Shack.  *See* Hendon Decl. ¶¶ 3-9 & Ex. A-J; Ex. 8
attached hereto.  Defendants have announced their intention to market mobile smartphones (*see*
Ex. 5, May 5, 2010 press release), and Sony Ericsson has every expectation that Defendants will
use their Infringing Sphere with Swirl Logo on these new phones – in direct competition with
Sony Ericsson – unless the Court enjoins Defendants from doing so.

> **C.     Defendants' Use of Infringing Sphere with Swirl Logo is Likely to Cause
> Confusion with Sony Ericsson's Registered Marks.**

As the final factor demonstrating likely success on the merits, Sony Ericsson can
establish a likelihood of consumer confusion resulting from Defendants' Infringing Sphere with
Swirl Logo.

The Fourth Circuit has enumerated the following factors in evaluating the likelihood of
confusion: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the
marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or
services that the marks identify; (4) the similarity of the facilities used by the markholders; (5)
the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual
confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming
public.  *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (*citing
Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one
through seven)); *see also Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455, 463–64 (4th Cir.
1996) (identifying factors eight and nine).  Not all of the factors are of equal importance, "nor
are they always relevant in any given case." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d

316, 320 (4th Cir. 1992) (noting that the *Pizzeria Uno* factors are not meant to be a rigid formula for infringement; they are "only a guide-catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion").

In this case, as set forth below, the factors establish that Defendants' use of its Infringing Sphere with Swirl Logos on storefronts, in advertisements, on television, on the Internet, in major retail chains, on marketing brochures, and on its products is likely to cause confusion with Sony Ericsson's Sphere with Swirl Mark.  That confusion is likely to occur in several ways.  For example, given the similarity in the types of products and channels of trade (*e.g.*, same store sales, proximity of stores, and sales over the Internet), the likelihood of confusion is acute – consumers will be lured to Defendants' products by the infringing logos, which consumer will mistakenly identify as the established Sony Ericsson brand.  Further, consumers are likely to be confused by the use of an infringing logo on a smartphone into thinking that they are purchasing a Sony Ericsson phone in a package with Defendants' mobile broadband service, when in fact they are purchasing Defendants' phone and service.  Consumers will also be misled into thinking that Sony Ericsson is providing mobile broadband service in connection with Defendants, or is somehow affiliated with Defendants' service, which it is not.  Finally, consumers seeing products bearing the infringing logos in use, after purchase, will associate those products with Sony Ericsson, such that Sony Ericsson will suffer any ill-effects of negative reports or feedback related to Defendants' products.

<b>1.     <i>Sony Ericsson has a strong and distinctive mark.</i></b>

"The strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006).  Strength of a trademark consists of

two categories of strength: (1) conceptual strength; and (2) commercial strength.  *George & Co., LLC*, 575 F.3d at 393; *CareFirst of Md.*, 434 F.3d at 269.

### a.      Sony Ericsson's mark is conceptually strong.

A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness in order from weakest to strongest: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful.  *George & Co.*, 575 F.3d at 393–94.  Fanciful marks are "invented" marks that have no meaning.  *Sara Lee Corp.*, 81 F. 3d at 464.

A logo mark that has no connection to an identifiable object is fanciful and inherently strong.  *Kellogg Co. v. Toucan Golf Inc.*, 337 F3d 616, 624 (6th Cir. 2003) (Kellogg "Toucan Sam" logo was found fanciful since the "unique shape, coloring, size, and demeanor are entirely the creation of Kellogg, and not reminiscent of anything seen in the wild.  Therefore, as a logo, he is . . . a fanciful mark and distinctive.").

Here, Sony Ericsson's Sphere with Swirl Mark does not depict any identifiable object or describe any aspect of mobile phones and/or mobile phone accessories.  Therefore, it is not suggestive, arbitrary, descriptive, or generic.  Rather, Sony Ericsson's originally created design, consisting of a three-dimensional green sphere with a silver swirl, reminiscent of nothing in the mobile phone market, classifies Sony Ericsson's mark as fanciful, worthy of the highest level of protection.

### b.      Sony Ericsson's mark is commercially strong.

Sony Ericsson's Sphere with Swirl Mark is also commercially strong.  In determining commercial strength, courts in the Fourth Circuit evaluate the following six-factors: "(1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5)

attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." *See, e.g.*, *George & Co.*, 575 F.3d at 395.

Here, Sony Ericsson has used its Sphere with Swirl mark for over nine years, since 2001, and spent approximately $26 million in direct advertisements appearing in the United States in 2009 alone. *See* Pierce Decl. ¶ 3, 4. The mark appears on every Sony Ericsson mobile phone sold, which totals as many as four million phones in the United States annually. *See id.* ¶ 8. Sony Ericsson sponsors popular events such as the Sony Ericsson Open where the Sony Ericsson Sphere with Swirl Mark has been prominent for five years. *See id.* ¶ 6, & Ex. B thereto. Sony Ericsson has received unsolicited media coverage. The Sony Ericsson Open was featured on "The Today Show," "Entertainment Tonight" and the popular MSNBC morning show "Morning Joe." *See* http://www.sonyericssonopen.com/News/Tennis/2010/Tournament-Week-2/Miami-Sunday-Record-Year.aspx.

Both the men's and women's finals were broadcast on CBS and the tournament received 63 hours of domestic television coverage. *Id.* Further Defendants have attempted to plagiarize Sony Ericsson's mark:



| Sony Ericsson's Sphere with Swirl Mark | Defendants' Infringing Sphere with Swirl Logos |

Hence, this factor weighs heavily in Sony Ericsson's favor as its Sphere with Swirl Mark is both conceptually and commercially strong.

## 2. *Sony Ericsson's mark and Defendants' logos are strikingly similar.*

The similarity of the marks focuses on the dominant portions of the parties' marks, including a similarity in sight, sound and meaning; the more similar the marks, the more likely is confusion. *George & Co., LLC*, 575 F.3d at 396. The marks do not need to be identical, but must be similar in appearance. *See Lone Star Steakhouse & Saloon*, 43 F.3d at 936. Where the logos share "strikingly similar" color schemes and designs, the similarity is undeniable. *See e.g.*, *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1205–06 (9th Cir. 2000) ("With a single glance at the two images, one is immediately struck by their similarity. Both logos consist of white capital letters in an almost identical sans serif font rendered on a green circle. The circle in turn is matted by a square yellow background. Quibbles over trivial distinctions between these two logos are unimpressive. The logos are glaringly similar. . . . It is precisely the identical colors that create the confusion: *white* script in a *green* circle on a *yellow* square"), *abrogated on other grounds by Winter v. Natural Res. Def. Council*, __ U.S. __, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

In this case, as in *Walt Disney*, the overwhelming similarities in the Sony Ericsson Sphere with Swirl Mark and Defendants' Infringing Sphere with Swirl Logos are undeniable. Both depict a three-dimensional sphere using an identical shade of green, silver/chrome/grey accents and shading, and a silver-shaded swirl. Both designs are fanciful (*i.e.*, invented with no meaning), so there is no functional explanation for their similarities.

Moreover, when Defendants begin using the Infringing Sphere with Swirl Logo on devices, including mobile phones, consumers using such devices will become accustomed to seeing the Infringing Sphere with Swirl Logo with different orientations. Indeed, because the logo when used on a mobile phone is much smaller than the logos depicted above, any

differences between Sony Ericsson Sphere with Swirl Mark and the Defendants' Infringing

Sphere with Swirl Logos will become almost impossible to discern.  A consumer viewing a

mobile phone or accessory from a short distance would likely be unable to differentiate the

marks and would likely be confused as to the origin of the device.

The striking similarity of the two marks makes it likely that a consumer will confuse the

two marks or believe that the marks are from related companies.  Therefore, this factor strongly

favors granting a preliminary injunction.

### 3.     *Sony Ericsson's and Defendants' goods are similar.*

In addition to the striking similarity of the logos, the goods and services with which the

logos are used are also similar, again weighing in favor of an injunction.

This factor recognizes that the use of similar logos on competing goods causes confusion.

Notwithstanding the directly competing mobile phone products, under this factor, "the goods in

question need not be identical or in direct competition with each other."  *George & Co.*, 575 F.3d

at 397 (citation omitted).  Rather, the Fourth Circuit often focuses on whether "the products and

services provided by the two companies serve the same purpose."  *Pizzeria Uno Corp. v. Temple*,

747 F.2d 1522, 1535 (4th Cir. 1984).

Indeed, "[c]omplementary products, or services, are particularly vulnerable to

confusion."  *Commc'ns Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1253 (4th Cir. 1970);

*Renaissance Greeting Cards, Inc.*, 227 F. App'x 239, 244 (4th Cir. 2007) ("[C]onfusion may

arise even where products are merely 'related.'"); *Synergistic Int'l, LLC v. Korman*, 402 F. Supp.

2d 651, 660-61 (E.D. Va. 2005) (noting that goods or services which the public believes go

"hand-in-hand" are complementary and, therefore, "particularly vulnerable to confusion"),

*vacated on other grounds by*, *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162 (4th Cir. 2006).

For related and complementary goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. *See AMF Inc. v Sleekcraft Boats*, 599 F.2d 341, 353-54 (9th Cir. 1979); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (wine and cheese are related goods such that consumers would be confused that the sources are associated); *Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 943 (Fed. Cir. 1990) (determining that OCTOCOM used in connection with modems is confusingly similar to OCTACOMM used in connection with computer programs because, *inter alia*, "modems and computer programs are commonly used together in networking").

For example, in *Comcet,* the Fourth Circuit found that a reasonable person may well believe that the source of the parties' products and services are related where one party offered communications computers and the other offered communications services since they are complementary and the same consumers are targeted. *Comcet*, 429 F.2d at 1253 (*citing Aunt Jemima Mills Co. v. Rigney & Co.*, 247 F. 407 (2d Cir. 1917) (pancake flour and pancake syrup are complementary), *cert. denied*, 245 U.S. 672, 38 S.Ct. 222, 62 L. Ed. 540 (1918)).

Here, Defendants have announced their intention to sell smartphone products in direct competition with Sony Ericsson's core product line—mobile phones such as smartphones and accessories. *See* Pierce Decl. Ex. 5 at 2. There can be no doubt that confusion will ensue from the use of two strikingly similar marks on identical products in the marketplace.

An important part of branding and marketing is how a product and trademark appear in use in the market. This is particularly important in the mobile communications market, especially in connection with the use and purchase of phones and smartphones. Consumers typically have an interest in each other's phones and want to get a feel for the functionality and

user interface and also want to know the identity of the company that makes it.  Consumers make

judgments about the phones they informally test and their user experience.  If consumers are

confused by Defendants' use of the Infringing Sphere with Swirl Logos, Sony Ericsson will be

irreparably harmed regardless of what the consumer thinks of Defendants' product.  For

example, if consumers interact with a Sony Ericsson phone and have a good user experience, he

or she may purchase Defendants' phone after seeing the Infringing Sphere with Swirl Logos

thinking it to be a Sony Ericsson phone.  Conversely, if a consumer has a bad user experience

with Defendants' phone, he or she may never even consider a Sony Ericsson phone because of

the confusion between the sphere with swirl logos.

Further, Defendants' goods and services already in the marketplace are complementary

and related to those of Sony Ericsson.  Sony Ericsson is a global provider of mobile phones and

related accessories and services. *See* Pierce Decl. ¶ 7.  Defendants sell home Internet and phone

services as well as mobile Internet goods/services that can be used with a mobile telephone such

as a Sony Ericsson phone.  Ex. 9; www.clear.com.  Specifically, Defendants' devices include

personal WiFi hotspots where mobile phones can connect to access Defendants' 4G network.

Moreover, because many companies that provide mobile or Internet service also offer

mobile telephones (Verizon, Sprint, AT&T), it is likely that consumers would think Defendants

and Sony Ericsson are related or affiliated companies in this small space.  Defendants reinforced

this expectation by announcing that they would sell mobile phones.

Further, Defendants' mobile Internet products, while not identical to Sony Ericsson's

product line, serve the same purpose as Sony Ericsson's products.  *Pizzeria Uno Corp.*, 747 F.2d

at 1535; *see also Aura Commc'ns, Inc. v. Aura Networks, Inc.*, 148 F. Supp. 2d 91, 95 (D. Mass.

2001) (finding that a chip incorporated into a wireless telephone headset was similar to

computer-network-infrastructure products that allow information to be transmitted over the Internet by copper wire or fiber-optic cable because both are "communications products that enable data, voice, and other information to be transported across electronic channels").

Smartphones not only provide users with voice service, as a traditional mobile phone, but also provide users with mobile access to the Internet as well as other services (texting, social networking, etc.).  Mobile broadband devices similarly provide users with mobile access to the Internet wirelessly at broadband speeds, without having to be near a wireless router that is hardwired into a computer network.  Both products offer the user mobile access to the Internet and both products do so using the same or similar networks.

Given the overlap in products and services offered by the parties, consumers are likely to be confused into thinking that Sony Ericsson and Defendants are the same or are affiliated or related, again favoring the grant of a preliminary injunction.

### 4.    *Sony Ericsson and Defendants use the same channels of distribution.*

Both Sony Ericsson and Defendants offer their products in the same channels of trade – at major national retailers like Best Buy and Radio Shack, in large malls nationwide, and on the Internet.

In fact, in Best Buy stores Defendants have large tabletop displays with multiple products and advertisements mere feet from where the Sony Ericsson products are located.  Hendon Decl. ¶ 4, and photos attached thereto as Ex. D.

And in shopping malls Sony Ericsson phones are offered in AT&T stores and kiosks, Pierce Decl. ¶ 4, just as Defendants' services and products are offered in Clear stores and kiosks. Of the top 20 malls in the United States,[10] 15 have an AT&T store and six of those 15 also have a

---

[10] According to a study presented by Eastern Connecticut State University, available at http://nutmeg.easternct.edu/~pocock/MallsLarge.htm, attached as Ex. G to Hendon Decl.

Clear store or one coming soon.  *See* Hendon Decl. ¶ 6 and charts attached thereto.  Of those 20

malls in the U.S., every mall that includes a Clear store also has an AT&T store selling Sony

Ericsson products.  *Id.*  Indeed, several shopping malls near this District include both Clearwire

and AT&T stores or kiosks where Sony Ericsson phones are sold.  *See id.* ¶ 9, and charts

attached thereto, (detailing information regarding: Tyson's Corner (VA), Pentagon City (VA),

The Mall at Columbia (MD), Arundel Mills Mall (MD), Mondawmin Mall (Baltimore, MD)).

      The manner in which the parties sell their goods is also similar.  Both smartphone and

mobile broadband services are generally sold at the same time as the mobile access devices.  In

fact, mobile access device are usually sold as part of a service plan package deal.  Co-branding

agreements between manufacturers and service providers are prevalent in the marketplace and

allow the co-branding of the products.  For example, Blackberry devices may be branded with a

T-Mobile service mark, Samsung phones may be branded with Sprint's service mark, Motorola

phones with Verizon Wireless marks, and Sony Ericsson phones with AT&T's service mark.  As

a result, a customer looking for a new mobile product will undoubtedly come across multiple

trademarks.

      Because of the similar marketing channels and methods of marketing mobile products,

consumers are likely to confuse Defendants' brand and Sony Ericsson's brand or are likely to be

misled into thinking that the two companies are affiliated.  *Sara Lee Corp.*, 81 F.3d at 465–66

(finding that the similarity of the facilities weighed in favor of confusion because, *inter alia*, both

products were distributed in the "FDM market" comprising of food, drug, and big box retail

outlets (Wal-Mart, K-mart, etc.) outlets); *see also V & S Vin & Sprit Aktiebolag v. Hanson*, 61

U.S.P.Q.2d 1277, 1280 (E.D. Va. Oct. 16, 2001) (finding that the facilities and advertising

utilized by the two parties were similar because they advertised in the same mediums and
marketed themselves to the same class of purchasers within the same geographic regions).

Therefore, this factor also favors granting a preliminary injunction.

### 5. *Sony Ericsson and Defendants use similar advertising.*

There is a likelihood of confusion where companies use the same means of advertising –
Internet, billboards, point-of-sale in the same stores – in the same geographic location where
consumers are exposed to both advertisements. *Pizzeria Uno Corp.*, 747 F.2d at 1535; *Sara Lee
Corp.*, 81 F.3d at 465–66 (finding that similarity of advertising weighed in favor of confusion
when both parties "employ[ed] similar media and target[ed] the same consumers"). Here, both
Defendants and Sony Ericsson advertise in the same spaces. For example, both have point of
sale advertisements in Best Buy (Hendon Decl. ¶ 4); both use the Internet heavily (Pierce Decl. ¶
4, 5); and both rely on print advertisements. *Id.* Put simply, where you find Sony Ericsson, you
will find Defendants. Hence, this factor also strongly favors granting a preliminary injunction.
*George & Co., LLC v. Imagination Entm't Ltd.*, no. 1:07cv498, 2008 U.S. Dist. LEXIS 56586, at
*12–13 (E.D. Va. July 25, 2008), *aff'd by George & Co., LLC*, 575 F.3d 383 (4th Cir. 2009).

### 6. *Defendants' intent to copy is evident.*

The Fourth Circuit "presume[s] that the person who sets out to infringe on another's
trademark has more brains than scruples, and will likely succeed." *Sara Lee Corp.*, 81 F.3d at,
466 (finding trademark infringement).

In this case, Defendants' intent to deceive should be presumed. The telecommunications
market fields relatively few players, and Sony Ericsson is a leading mobile phone provider in
that market. *See* Pierce Decl. ¶ 10. Prior to Defendants' use of the infringing sphere with swirl
logos, Sony Ericsson was the only company in the mobile communications business that used a

sphere with swirl logo in green and silver/white/gray colors to identify its goods and services. If there were any doubt as to Defendants' knowledge of Sony Ericsson's mark, it would be erased by Sony Ericsson's oppositions to Defendants' trademark applications and related discussions with Sony Ericsson.

The striking similarity of Defendants' Sphere with Swirl Logos to Sony Ericsson's Sphere with Swirl Mark in the identical colors, and with the planned introduction into direct competition in the smartphone market, shows an obvious intent to copy and deceive. *CytoSport, Inc. v. Vital Pharms., Inc*., 617 F. Supp. 2d 1051, 1072 (E.D. Cal. 2009) ("Additionally, evidence of [Defendant's] intent to derive benefit from [Plaintiff's] valuable MUSCLE MILK® brand may be found in the obvious similarity between the product packaging and labeling"). In addition, Defendants' adoption of the Infringing Sphere with Swirl Logo while agreeing to Sony Ericsson's demands to cease use of the effectively identical Infringing Reverse Image Logo demonstrates Defendants' clear intent to benefit from Sony Ericsson's goodwill in its Sphere with Swirl Mark.

| | | |
|---|---|---|
|  |  |  |
| Sony Ericsson's Sphere with Swirl Mark | Defendants began using this infringing sphere with swirl logo in October 2010. | Defendants' Infringing Reverse Image Logo |

Given Defendants' conduct, this factor weighs heavily in favor of granting a preliminary injunction.

### 7.     *Actual Confusion is inevitable.*

Although actual confusion can be persuasive evidence relating to a likelihood of confusion, it is well accepted that no actual confusion is required to prove a case of trademark infringement. *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007). As the Fourth Circuit has stated, "[t]he test is *likelihood* of confusion; evidence of actual confusion is unnecessary." *Sara Lee Corp.*, 81 F.3d at 463 (emphasis in original) (finding trademark infringement despite lack of actual confusion evidence). Moreover, the Fourth Circuit does not require a survey to prove the likelihood of confusion. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654 (4th Cir. 1996) (affirming jury verdict finding infringement); *see also Maxim Integrated Prods., Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009) (granting preliminary injunction while explaining that, since actual confusion is difficult to prove, it is not necessary to do a survey before obtaining a preliminary injunction) (*citing Cytosport*, 617 F. Supp. 2d at 1073 (granting preliminary injunction)); *AMF Inc.*, 599 F.2d at 353).

Here, given Defendants' very recent introduction of its Infringing Sphere with Swirl Logo, Sony Ericsson does not yet have evidence of actual confusion. However, all of the factors point to a likelihood of confusion, particularly with Defendants' imminent introduction of directly competing smartphones. Given this context, this factor appears neutral at this time.

### 8.     *The quality of Defendants' products is not relevant here.*

The Fourth Circuit has stated that this factor applies in "situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods." *Sara Lee Corp.*, 81 F.3d at 467 (finding that the factor did not apply in that case). Here, to date,

Defendants have not produced any cheap copies or knockoffs of Sony Ericsson's branded goods. Therefore, this factor is not relevant to the analysis at this time.

9.     ***The sophistication of the consuming public is not relevant here.***

Under Fourth Circuit precedent, this factor is only considered when the relevant market does not consist of the public at-large. "Barring an unusual case, buyer sophistication will only be a key factor when the relevant market is not the public at-large. If the typical consumer in the relevant market is sophisticated in the use of – or possesses an expertise regarding – a particular product, such sophistication or expertise may be pertinent in determining the likelihood of confusion." *Sara Lee Corp.*, 81 F.3d at 467; *see also George & Co., LLC*, 575 F.3d at 400 ("Here, the relevant market is the public at-large, and there is no evidence that persons who buy dice games are any more sophisticated about dice games than those who comprise the market for other ordinary retail goods.") (internal citations omitted).

Similarly, here, the relevant market is anyone in the market for telecommunications products and services, including mobile telephones, smartphones, and mobile broadband Internet and devices. There is no reason to think that this does not include the majority of the public at-large. Therefore, this factor is not relevant to the analysis.

## II.   SONY ERICSSON IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

Irreparable harm presumptively follows from trademark infringement. *Lorillard Tobacco Co. v. S&M Brands, Inc.*, 616 F. Supp. 2d 581, 587 (E.D. Va. 2009) (holding that a showing of likelihood of confusion establishes irreparable harm."); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) ("[A] presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion."); *see also Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 939 (*citing Wynn Oil Co. v. American Way Service Corp.*,

943 F.2d 595, 608 (6th Cir. 1991)).  When credible evidence of infringement is presented, courts are justified in finding that a remedy at law will be inadequate to preserve the rights of the trademark registrant pending trial.  *Englert, Inc. v. LeafGuard U.S., Inc.*, No. 4:09-cv-00253-TLW, 2009 U.S. Dist. LEXIS 116106, at *15–16 (D.S.C. Dec. 14, 2009).

"A defendant's unauthorized use of a plaintiff's trademarks gives rise to irreparable injury as it causes plaintiff to lose control of its business reputation, there is a substantial likelihood of confusion to the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the goodwill and reputation of the plaintiff."  *Allegra Network LLC*, 2009 WL 3734288, at *9–10 (granting motion for preliminary injunction on trademark infringement claim).

Here, Sony Ericsson has demonstrated that there is a substantial likelihood of confusion to the purchasing public if Defendants are permitted to continue using their Infringing Sphere with Swirl Logo.  Sony Ericsson has no control over Defendants or the quality of their goods and services.  Thus, Defendants' use of confusingly similar logos will necessarily result in Sony Ericsson losing control of its business reputation.  Sony Ericsson has invested extensive time and resources into its brand, specifically including its Sphere with Swirl Mark, and to lose control over the reputation associated with that mark would be extensive and irreparable.  Negative consumer opinion goes viral.  It proliferates quickly through the marketplace and leaves an indelible mark on the reputation of the brand.  Monetary recovery simply cannot compensate for that type of deep-seated injury.  Defendants' use of the confusingly similar Infringing Sphere with Swirl Logo quite simply creates an inherent and irreparable injury to the goodwill and reputation of Sony Ericsson.  Therefore, such use should be immediately enjoined.

### III.    BALANCE OF EQUITIES TIPS DECIDEDLY IN SONY ERICSSON'S FAVOR.

Sony Ericsson has demonstrated that it will suffer irreparable harm if Defendants are permitted to use the Infringing Sphere with Swirl Logo in connection with their mobile broadband services, devices, mobile phones, and related products.  Defendants, on the other hand, can easily revise their logo to a new non-infringing logo.  Any cost that Defendants might endure due to such a change is a result of their own action.  Defendants developed and selected their most recent Infringing Sphere with Swirl Logo in the face of Sony Ericsson's objection and successful demand that Defendants cease use of the effectively identical Infringing reverse Image Logo.  This type of self-inflicted harm is accorded very little, if any, weight in the balance of equities.  *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008).  Hence, the harm to Sony Ericsson decidedly outweighs any harm to Defendants from the issuance of an injunction.

### IV.    AN INJUNCTION IS IN THE PUBLIC INTEREST.

The Lanham Act is, *inter alia,* a consumer protection statute.  *Lorillard Tobacco Co. v. S&M Brands, Inc.*, 616 F. Supp. 2d 581, 589 (E.D. Va. 2009) ("The expansive policy considerations behind Congress's adoption of the Lanham Act . . . evidences the wide public interest in fair competition and avoiding confusion in the marketplace.  Here, [d]efendant's conduct is likely to cause confusion . . . . As the public interest favors fair competition and truth in advertising, the public's interest here favors granting the injunction . . . .").  A preliminary injunction preventing infringement serves the public interest in preventing consumer confusion.  *H. Jay Spiegel & Assocs., P.C.*, 652 F. Supp. 2d at 638 ("The public interest favors the protection of valid trademark rights against infringement."); *see also Allegra Network LLC*, 2009 WL 3734288, at *10 (granting motion for preliminary injunction with respect to plaintiff's claim of

trademark infringement).  Here, Sony Ericsson has demonstrated that there is a substantial likelihood of confusion to the purchasing public if Defendants are permitted to continue using the Infringing Sphere with Swirl Logos.  It is therefore in the public interest to enjoin Defendants from such use.

## CONCLUSION

Based on the foregoing, and given Defendants' refusal to cease infringing actions, Sony Ericsson respectfully requests that the Court take immediate action to enjoin Defendants from using the Infringing Sphere with Swirl Logos.

Respectfully submitted,

Dated: January 14, 2011

By:_____/s/_____

Roger A. Colaizzi, Va. Bar #32651
Christopher Scott Crook, Va. Bar # 76636
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
Telephone (202) 344-4000
Fax (202) 344-8300
Email: racolaizzi@venable.com
        cscrook@venable.com

*Attorneys for Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc.*