**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

_____

|  |  |  |
|---|---|---|
| **SONY ERICSSON MOBILE COMMUNICATIONS AB,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiffs,** | ) | 1:11-cv-00048 (CMH)(TCB) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CLEARWIRE CORPORATION,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CLEARWIRE COMMUNICATIONS LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## FIRST AMENDED COMPLAINT

Plaintiffs Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile

Communications (USA) Inc. (collectively, "Sony Ericsson" or "Plaintiffs") allege the following

against Defendants Clearwire Corporation and Clearwire Communications LLC (collectively

"Clearwire" or "Defendants"):

## INTRODUCTION

1.      This is an action for trademark infringement and related claims arising from

Defendants' use of infringing sphere with swirl logos which are confusingly similar to Sony

Ericsson's federally registered sphere with swirl mark, in connection with mobile broadband

products and services.  This action is also for copyright infringement arising from Defendants'

copying of Sony Ericsson's federally registered, copyrighted design.  Further, this is an action

for Defendants' breach of a December 3, 2010 written Agreement between the Parties, by which

Defendants agreed to cease using infringing logos.

2.      Sony Ericsson is a well-established, leading provider of mobile phones, such as

smartphones and related accessories.  For years, Sony Ericsson has used distinctive, recognized

sphere with swirl green and silver/chrome/grey logos – which are federally registered trademarks

– to advertise and brand its products and services.  Sony Ericsson has spent millions of dollars on

advertising and sponsorships to create goodwill and build an association with its sphere with

swirl marks in the minds of consumers.

3.      Defendants operate a mobile broadband network and sell related products for

accessing its network.  Defendants' services include home phone, home Internet, and mobile

Internet.  Defendants have used infringing sphere with swirl logos, in the same green and

silver/chrome/grey colors as Sony Ericsson's trademarks, to market and sell their mobile

broadband service and products.  Defendants' infringing sphere with swirl logos are confusingly

similar to Sony Ericsson's sphere with swirl registered trademarks.



4.      Prior to Defendants' use of their Infringing Sphere with Swirl Logos, Sony

Ericsson was the only company in the mobile communications business with a registered sphere

with swirl logo in green and silver/chrome/grey colors.

5.      In late 2009, Sony Ericsson learned that Defendants filed trademark applications for a sphere with swirl logo in the same green and silver/chrome/grey colors that Defendants are using now, with the colors in an inverse image configuration ("Infringing Reverse Image Logo").

| | |
|---|---|
|  |  |
| Sony Ericsson's Sphere with Swirl Mark | Defendants' Infringing Reverse Image Logo |

6.      Through opposition proceedings initiated at the United States Trademark Trial and Appeal Board and discussions with Defendants, Defendants agreed to Sony Ericsson's demands and entered into an agreement with Sony Ericsson to cease using the Infringing Reverse Image Logo and to expressly abandon their trademark applications for that logo.

7.      Despite agreeing to cease the use of the Infringing Reverse Image Logo, Defendants continue to use the Infringing Reverse Image Logo as well as other essentially identical Infringing Sphere with Swirl Logos:

- on complementary products and services;

- in the same markets as Sony Ericsson;

- advertised in the same channels;

- offered for sale to the same consumers; and

- distributed through the same marketing channels (stores, malls and the Internet).

8.      In addition, according to Defendants' press releases, Defendants' Infringing Sphere with Swirl Logos will be used in the sale of mobile phone products like those of Sony Ericsson.  On May 5, 2010, Defendants announced that they would begin selling smartphones –

in direct competition with Sony Ericsson's core product – by year-end.  On November 4, 2010, Clearwire announced a delay, but not cancellation, of its plans to offer smartphones.

9.      Sony Ericsson has branded every phone it has sold worldwide, including the nearly 32 million phones sold in the United States, with its Sphere with Swirl Mark.

10.      On information and belief, Defendants plan to brand their upcoming smartphones with the infringing sphere with swirl logo.   On information and belief, most phone manufacturers place their trademarks on their phones.



| Representative use of Sony Ericsson's Sphere with Swirl Mark. | Mock up of smartphone with expected use of Infringing Sphere with Swirl Logo shown bigger than expected use. | Representative use of third party marks on smartphone. |
| --- | --- | --- |

11.      Defendants' use of the Infringing Sphere with Swirl Logos already is causing a likelihood of confusion in the marketplace.  Use of the Infringing Sphere with Swirl Logos on the announced smartphone will further exacerbate that confusion.  Unless enjoined, Defendants' current and announced conduct will confuse consumers and cause irreparable harm to Sony Ericsson.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1338(a), and 1338(b).  This Court also has jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367(a).

13.     Defendants are subject to the personal jurisdiction of this Court because, among

other things, Defendants have purposefully availed themselves of the benefits of doing business

within the Commonwealth of Virginia by advertising and providing goods and services to

residents of Virginia, and by causing injury to Sony Ericsson within this District.  Defendants are

also physically present in this District, having corporate offices at 593 Herndon Parkway,

Herndon, VA 20170.

14.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) because a substantial

part of the events giving rise to the claims occurred in this District and Defendants are residents

of this District.

## PARTIES

15.     Sony Ericsson Mobile Communications AB is a corporation organized under the

laws of Sweden.  It was established in 2001 and is a 50:50 joint venture between Sony

Corporation and Telefonaktiebolaget LM Ericsson.  Sony Ericsson is a global provider of mobile

phones such as smartphones and related accessories.  The products combine powerful technology

with innovative applications for mobile communications and entertainment.

16.     Sony Ericsson Mobile Communications (USA) Inc. is a corporation organized

under the laws of Delaware with a principal place of business in Atlanta, Georgia.  It is a wholly

owned subsidiary of Sony Ericsson Mobile Communications AB.

17.     Clearwire Corporation is organized under the laws of Delaware.  Clearwire

Corporation, through its operating subsidiaries, is a provider of wireless broadband goods and

services.  Defendants market their 4G goods and services under its own brand, as well as through

its wholesale relationships with Sprint, Comcast, Time Warner Cable, Best Buy Co., and

Cbeyond.  Clearwire Corporation's strategic investors include Intel Capital, Comcast, Sprint,

Google, Time Warner Cable, and Bright House Networks.

18.     According to Defendants' website, its mobile broadband service is currently

available in various markets across the United States, including: Atlanta and Milledgeville,

Georgia; and Alexandria and Richmond, Virginia.  In addition to its broadband services,

Defendants sell broadband access devices including modems, routers, PC cards, and mobile Wi-

Fi devices.  Defendants have also announced plans to sell smartphones, designed to allow users

to access its mobile broadband network.

19.     Clearwire Communications LLC is organized under the laws of Delaware.

Clearwire Communications LLC is an operating subsidiary of Clearwire Corporation and, on

information and belief, oversees day-to-day operations relating to Clearwire's product offerings.

## RELEVANT TECHNOLOGY AND MARKETS

20.     The mobile phone market has developed, and continues to develop, at an

extremely rapid pace.  Where cellular telephones that only provided voice service once

dominated the market, new smartphones are now commonplace.  Smartphones not only provide

users with voice service, but also provide users with mobile access to the Internet and other

popular services, such as texting and social networking for communication and entertainment

purposes.

21.     At the same time, mobile broadband has expanded greatly in the United States.

Broadband Internet allows users to access the Internet at high speeds.  Providers of broadband

Internet generally offer high speed data packages as well as voice services over Internet protocol

("VOIP").  Mobile broadband allows users to access the Internet at broadband speeds from

anywhere within the service provider's coverage area.  Mobile broadband access devices are

products that connect to a user's phone, smartphone, and/or computer (whether plugged in or

wirelessly) to allow the user to access the mobile broadband network.

22.     The markets for traditional mobile phone service and mobile broadband service

are converging rapidly.  Both smartphones and mobile broadband access devices require high

speed wireless networks to provide services to the end user.  The networks are now capable of

handling both voice services and mobile broadband services.  4G, offered by Defendants, is

becoming the new standard among mobile phone service plan providers.

23.     The functionality of mobile access devices (smartphones and mobile broadband

access devices) is converging as well.  Smartphones and mobile broadband access devices can

access high speed networks and allow users to send and receive information over the networks at

broadband speeds.  In addition, the latest smartphones, like mobile broadband access devices,

have the ability either to plug into a computer or to act as a Wi-Fi hot spot to provide a user with

access to a mobile broadband network.

24.     The manner in which mobile access devices and their associated services are sold

are often the same.  Mobile access devices are usually sold along with a service plan in a bundle

or package deal.  Co-branding agreements between manufacturers and service providers are

prevalent in the marketplace and allow the co-branding of mobile access devices.  Many mobile

access devices bear the trademarks of both the product manufacturer and the service provider.

25.     Sony Ericsson has been a leader for many years in the mobile phone market, creating and selling award-winning mobile phones such as smartphones with superior functionality and related accessories.  As detailed below, Sony Ericsson's products are branded and advertised using Sony Ericsson's distinctive, recognized, and federally registered Sphere with Swirl Mark.

26.     Sony Ericsson sells its phones online and through brick-and-mortar retail locations, including Best Buy and Radio Shack.  Sony Ericsson had over $2.4 billion dollars worth of global sales in the third quarter of 2010, and has sold nearly 32 million phones in the United States alone.

27.     Due to their superior design and performance, Sony Ericsson's products have received numerous awards in the United States and abroad, including but not limited to the: Telecom Xperience Accessory Awards – Most Innovative Accessory and Best Experience Overall 2011 (LiveView™); EISA Best Product Award – European Mobile Phone 2010-2011 (Xperia™ X10 mini); 2010 Red Dot Product Design Award (Xperia™ X10 mini); GSM Association Global Mobile Award (Best Handset 2008), (3GSM Handset of the Year – 2007); Mobile Awards (Manufacturer of the Year Handset of the Year – 2007); Mobile Choice Awards (Best Music Phone Best Camera Phone – 2007), (Manufacturer of the Year Phone of the Year Reader's Dream Phone of the Year Music Phone of the Year – 2006), and 2007 Computer Shopper Awards (Best Handset).

28.     Defendants purport to operate the largest 4G network in the United States, providing mobile broadband goods and services to 71 markets covering 110 million people throughout the country.

29.     While Defendants have not yet entered the mobile phone market, Defendants are growing quickly and have announced that they will offer mobile phones to their rapidly increasing customer base.  Defendants claim to have 2.84 million current subscribers, up 402% from the third quarter in 2009.  At the time of their third quarter report, Defendants expected to have over 4 million subscribers by the end of 2010.  Defendants boast having earned $147 million in revenues in the third quarter in 2010, up 114% compared to the third quarter in 2009.

30.     In addition to mobile broadband service, Defendants sell consumer electronic devices allowing access to its mobile broadband network—including announced plans to begin selling smartphones—marketed and sold in connection with the infringing logos discussed below.

31.     Like Sony Ericsson, Defendants sell their products and services online and through brick-and-mortar stores.  Defendants operate their own stores and, like Sony Ericsson, sell products and services through consumer electronics retailers such as Radio Shack and Best Buy.  On information and belief, Defendants will sell their announced smartphones through these same channels in direct competition with Sony Ericsson.

32.     While Sony Ericsson welcomes competition on the merits from Defendants, Defendants' use of logos that are strikingly and confusingly similar to Sony Ericsson's recognized, federally registered logos is illegal and should be enjoined.

## SONY ERICSSON MARKS

33.     Sony Ericsson owns several federally registered and pending trademarks ("Marks") for its green/chrome/grey Sphere with Swirl Logo in the mobile market.  The goods and services connected with these registered Marks are broad, covering not only the phones, but

also related features, functionality, accessories, and devices.  The registrations for these marks

are attached hereto as Exhibit A.

| MARK[1] | FILING DATE | DATE OF FIRST USE IN COMMERCE (at least as early as) (INTERNATIONAL CLASS) | REG. OR SERIAL NO. |
|---|---|---|---|
|  | 1/14/08 | January 2002 (Class 16) | Reg. No. 3,690,610 |
|  | 4/20/07 | October 2001 (Class 38) | Reg. No. 3,347,926 |
|  | 11/21/06 | August 2006 (Class 9) October 2001 (Class 35) January 2005 (Class 36) May 2006 (Class 42) | Reg. No. 3,289,672 |
|  | 6/10/09 | October 2009 (Class 9) | Reg. No. 3,881,689 |
|  | 6/10/09 | Nationwide rights will accrue from filing date of 6/10/09 once registered (Classes 9, 16, 38 and 41) | Serial No. 77/756,438 |

---

[1]  As pictured in the records contained on the United States Patent and Trademark Office's website.

| | | | |
|---|---|---|---|
| Side view of the mark on products. | 1/17/08 | January 2003 (Class 9) | Reg. No. 3,620,348 |
| | 1/14/08 | Nationwide rights will accrue from filing date of 1/14/08 once registered (Classes 16 and 41) | Serial No.77/371,204 |
| I tennis | 1/15/08 | Nationwide rights will accrue from filing date of 1/15/08 once registered (Classes 35 and 41) | Serial No. 77/371,717 |

34.      Sony Ericsson also owns multiple federally registered and pending trademarks for its Sphere with Swirl Logo in black and white.  Examples of these marks are attached hereto as Exhibit B.

35.      Sony Ericsson has used its Marks extensively in commerce for many years.  It has invested heavily in advertising and promoting its Marks and related products over the years, including spending approximately $40 million USD in the past two years alone.  Sony Ericsson advertises its mobile phones and related products through television, radio, in store collateral advertising displays, direct mail, brochures, handouts and via the Internet, including through its own website, through banner ads, through keywords purchased from search engines such as Yahoo, Google, and MSN, and through social media such as Twitter and Facebook.

36.      Since 2005, Sony Ericsson has also advertised its products through major event sponsorship such as the "Sony Ericsson Open" (http://www.sonyericssonopen.com/), an annual tennis tournament held in Miami, Florida that draws top-ranked tennis players from around the world.

37.    As a result of its significant advertising, strong sales, and superior products, Sony Ericsson has built substantial consumer goodwill associated with its Marks worldwide.

38.    Given the value of Sony Ericsson's trademark rights, Sony Ericsson has been vigilant in actively policing its Marks on a worldwide basis.  This includes three opposition proceedings brought before the United States Trademark Trial and Appeal Board ("TTAB") against Defendants.

<b><u>CLEARWIRE'S INFRINGING MARKS</u></b>

39.    In or about October 2009, Sony Ericsson became aware of Defendants' intent-to-use applications (a trademark application for a mark which has not yet been used by the applicant) with the United States Patent and Trademark Office for marks that contained the following infringing sphere with swirl logo (previously referred to as "Infringing Reverse Image Logo" hereinafter "Infringing Mark 1"):



40.    Around the same time (October 2009), Sony Ericsson learned that Defendants were using a similar mark in connection with the sale of Defendants' products and services.  This mark is depicted below ("Infringing Mark 2"):



.

41.    Defendants have used in commerce the marks depicted above as the source

identifier for its mobile broadband service as well as its mobile broadband access devices.

42.     In or about January 2010, Sony Ericsson filed oppositions with the TTAB challenging Defendants' intent-to-use applications referenced above.  Sony Ericsson also initiated discussions with Defendants in a good faith attempt to resolve the matters with Defendants.

43.     During the course of these discussions, and without notice to Sony Ericsson, on or about May 5, 2010, Defendants issued a press release stating, among other things, Defendants' intent to sell smartphones, Sony Ericsson's core product line.

44.     Two months later, in or about July 2010, Sony Ericsson learned that Defendants were using the following additional logo in connection with the sale of Defendants' products and services, a logo that, on information and belief, would be used on Defendants' upcoming line of smartphones ("Infringing Mark 3"):



45.     Discussions expanded to cover Defendants' use of Infringing Mark 3.  The discussions continued between July 2010 and the beginning of October 2010, during which time the parties made progress.  In fact, Defendants ultimately agreed (in December 2010) to permanently stop using Infringing Mark 1, which is effectively identical to Infringing Marks 2 and 3, with the colors inversed.

46.     In or about October 2010, as discussions were on-going, Defendants again, without advance notice to Sony Ericsson, suddenly began using the following green Sphere Logo ("Infringing Mark 4"), which is strikingly similar to Sony Ericsson's Marks and which

Defendants, on information and belief, intend to now use in connection with its smartphone line in direct competition with Sony Ericsson:



47.     On or about December 3, 2010, Sony Ericsson and Defendants—upon the mutual exchange of valuable consideration—entered into a legally binding agreement whereby Defendants agreed to stop using certain infringing marks.  The agreement is attached hereto as Exhibit C (the "Agreement").

48.     Pursuant to the Agreement, Defendants agreed in relevant part to immediately: (a) suspend its rollout of Infringing Mark 4, (b) cease any and all use of Infringing Mark 1, and (c) abandon its trademark applications for Infringing Mark 1.

49.     By agreeing to stop the use of Infringing Mark 1 and suspend the use of Infringing Mark 4, Defendants effectively acknowledged that these marks infringe Sony Ericsson's rights.

50.     Defendants also agreed:

that it will not use any color or color combination that is confusingly/substantially similar to Sony Ericsson's color combination, in the Clearwire mark shown below:



For purposes of this obligation, a 'color or color combination that is

confusingly/substantially similar to Sony Ericsson's color combination' means a

mark that contains either (a) the shades of green featured by Sony Ericsson on

Sony Ericsson's physical products and/or printed materials and website as shown

below as closely as possible to true color or (b) any shade of green combined with

silver/chrome/grey.

*See* Exhibit C at 4.

51.     In exchange for these concessions, Sony Ericsson agreed to withdraw and cease

certain opposition proceedings against Defendants before the TTAB, Opposition Nos. 91193436,

91193423, and 91193444.

52.     Pursuant to the Agreement, both Parties agreed to "actively work[] together in

good faith to modify [Infringing Mark 4] so that Clearwire . . . can create, no later than January

10, 2011, a new or modified Clearwire logo that is, in both party's opinion, non-infringing . . . of

the Sony Ericsson [Sphere with Swirl Mark]."

53.     The Parties even agreed as to the types of changes that could be made to

Defendants' Infringing Marks (as defined below) so Defendants' marks would no longer infringe

Sony Ericsson's rights.  *See* Exhibit C at 5.

54.     On information and belief, despite this agreement, Defendants' Infringing Mark 1,

Infringing Mark 2, Infringing Mark 3, and Infringing Mark 4 (collectively the "Infringing

Marks") are currently being used by Defendants to identify Defendants' mobile broadband

goods/services.  Attached hereto as Exhibit D are non-exclusive examples of Defendants'

Infringing Marks in use.

55.     Defendants' actions over time—culminating with the introduction of Infringing Mark 4 into the marketplace—clearly demonstrate that Defendants have endeavored to create marks that are confusingly similar to Sony Ericsson's Marks.  Defendants' use of substantially identical Infringing Sphere with Swirl Marks in connection with goods and services related to those sold by Sony Ericsson is likely to cause consumer confusion, infringes upon Sony Ericsson's trademarks, and constitutes unfair competition and copyright infringement.

### COUNT I
### LANHAM ACT
### TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

56.     Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

57.     Defendants' conduct constitutes trademark infringement of Sony Ericsson's registered Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

58.     Defendants' Infringing Marks are confusingly similar to Sony Ericsson's registered Marks.

59.     Defendants are using the Infringing Marks in interstate commerce by advertising, offering for sale, and selling goods and services bearing the Infringing Marks.

60.     The goods and services sold by Defendants bearing the Infringing Marks are substantially related to goods and services to those sold by Sony Ericsson.  Defendants' use of the Infringing Marks on these goods and services is likely to cause confusion or to cause mistake or to deceive as to the origin, sponsorship or affiliation of the goods/services advertised and sold by Defendants.

61.     Sony Ericsson has no control over the quality of services offered by Defendants under the confusingly similar marks and, as a result, Sony Ericsson's valuable goodwill with

respect to its Marks is at the mercy of the Defendants.

62.     Defendants are directly and contributorily liable for infringement of Sony Ericsson's registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

63.     Defendants' conduct has caused and, unless restrained by the Court, will continue to cause irreparable injury to Sony Ericsson.

64.     Defendants' conduct has damaged Sony Ericsson in an amount to be determined at trial.

65.     On information and belief, Defendants' aforesaid infringing conduct has been willful, wanton, and malicious, and done with the intent to deceive.

66.     As a result of Defendants' wrongful acts, Sony Ericsson is entitled to an award of treble its actual damages, Defendants' profits, and its reasonable attorneys' fees and costs.

67.     Sony Ericsson has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' infringing conduct.

**COUNT II**
**LANHAM ACT**
**UNFAIR COMPETITION**
**(15 U.S.C. § 1125(a))**

68.     Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

69.     Defendants' conduct constitutes unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

70.     Specifically, Defendants have used the Infringing Marks in connection with mobile access devices and services in a way that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, sponsorship, or association of Defendants'

goods/services with Sony Ericsson's Marks and the goods and services associated therewith.

71.     Defendants are using the Infringing Marks in interstate commerce by advertising, offering for sale, and selling goods and services bearing the Infringing Marks.

72.     On information and belief, Defendants' activities have deceived, or are likely to deceive, a substantial portion of the purchasing public, and such deception is material in that it is likely to influence the buying decisions of the purchasing public.

73.     By reason of Defendants' conduct as alleged above, Sony Ericsson has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained.

74.     Defendants are liable for unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

75.     Defendants' conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Sony Ericsson.

76.     Defendants' conduct has damaged Sony Ericsson in an amount to be determined at trial.

77.     On information and belief, Defendants' aforesaid infringing conduct has been willful, wanton, and malicious, and done with the intent to deceive.

33.     As a result of Defendants' wrongful acts, Sony Ericsson is entitled to an award of treble its actual damages, Defendants' profits, and its reasonable attorneys' fees and costs.

78.     Sony Ericsson has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

## COUNT III
## GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT/
## STATUTORY AND COMMON LAW
## UNFAIR COMPETITION

79.     Sony Ericsson incorporates by reference and realleges each and every allegation of the Paragraphs above.

80.     Defendants' use of the Infringing Marks creates the impression to a consumer that Sony Ericsson and Defendants are somehow affiliated and is likely to confuse consumers into purchasing Defendants' goods and/or services when they were instead seeking those of Sony Ericsson.

81.     The resemblance between the Infringing Marks and Sony Ericsson's Marks is so close that it is likely to confuse a prospective buyer or customer exercising ordinary caution in his or her dealings.

82.     Defendants' use of the Infringing Marks is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods/services advertised and sold by Defendants.

83.     Defendants' use of the Infringing Marks is likely to cause confusion or misunderstanding as to affiliation, connection, or association with or certification by Sony Ericsson.

84.     Defendants' use of the Infringing Marks represents that Defendants have a sponsorship, approval, affiliation, or connection with Sony Ericsson, which they do not have.

85.     Defendants' conduct violates the Uniform Deceptive Trade Practices Act under Georgia state law, O.C.G.A. §§ 10-1-370 through 10-1-375 ("UDTPA").

86.     On information and belief, Defendants have willfully engaged in the above-mentioned practices, knowing them to be deceptive and intending to deceive and mislead the

public.

87.     Defendants' conduct constitutes direct trademark infringement and unfair competition under Georgia common law and violates Georgia Code § 23-2-55.

88.     Defendants' conduct has damaged Sony Ericsson in an amount to be determined at trial.

89.     Defendants' conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Sony Ericsson within the State of Georgia as Sony Ericsson's wholly owned U.S. subsidiary, Sony Ericsson Mobile Communications (USA) Inc., has its principal place of business in Atlanta, Georgia.  Sony Ericsson has no adequate remedy at law and is entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

**COUNT IV**
**COPYRIGHT INFRINGEMENT**
**(17 U.S.C. §§ 101 et seq.)**

90.     Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

91.     Sony Ericsson owns all rights and title in the copyright for its Sphere with Swirl Logo (the "Sony Ericsson Sphere with Swirl Artwork").



92.     Sony Ericsson's Sphere with Swirl Artwork is a wholly original work that constitutes copyrightable subject matter under the laws of the United States.  Sony Ericsson has complied in all respects with the U.S. Copyright Act of 1976, 28 U.S.C.§ 101 *et seq*., and has a federally registered copyright, VA 1-406-813, for its Sony Ericsson Sphere with Swirl Artwork. A copy of the registration is attached hereto as Exhibit E.

93.     At all times relevant to this action, Defendants had access to the Sony Ericsson Sphere with Swirl Artwork, which has appeared on advertising at sponsored events, television, the Internet, and industry trade shows.

94.     The following artwork used by the Defendants is substantially similar or identical to Sony Ericsson's copyrighted Sony Ericsson Sphere with Swirl Artwork.

| Sony Ericsson's Sphere with Swirl Artwork | Defendants' infringing logo |
|---|---|
|  |  |
|  |  |

95.     Defendants have and will continue to infringe Sony Ericsson's copyright relating to the Sony Ericsson Sphere with Swirl Artwork by creating substantially similar copies and distributing the infringing copies in the marketplace.

96.     Defendants' creation of a logo that is substantially similar to Sony Ericsson's copyrighted work was done in violation of the exclusive rights of Sony Ericsson as the copyright holder.  No permission, license or any other authorization has been provided to Defendants to create and distribute copies of Sony Ericsson's copyrighted artwork.

97.     Sony Ericsson has been and continues to be irreparably harmed by Defendants' ongoing copyright infringements, entitling Sony Ericsson to injunctive relief.

98.     On information and belief, Defendants' ongoing infringements of Sony Ericsson's copyrights are willful, knowing and malicious.

99.     Sony Ericsson has sustained damages by Defendants' past copyright infringements and seeks monetary damages as a result.

100.    On information and belief, Sony Ericsson's copyright registration pre-dates when the infringement commenced.

101.    Sony Ericsson seeks at its option actual damages or statutory damages to the full extent provided by law, its costs, and reasonable attorneys' fees.

## COUNT V
## BREACH OF CONTRACT

102.    Sony Ericsson hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

103.    On December 3, 2010, the Parties entered into a legally binding agreement.

104.    Consideration for the Agreement included, but was not limited to, Defendants' agreement to stop using Infringing Mark 1.

105.    Further consideration for the Agreement included, but was not limited to, Sony Ericsson's agreement to withdraw and cease opposition proceedings before the TTAB, specifically Opposition Nos. 91193436, 91193423, and 91193444.

106.    Defendants breached the Agreement by, among other conduct, using Infringing Mark 1 on or in relation to Defendants' mobile broadband access devices and to identify Defendants' mobile broadband goods/services.  *See* Exhibit D.

107.    Defendants' breaches of the Agreement have damaged Sony Ericsson in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc., prays that the Court enter the following relief:

**A.**     Adjudge that Sony Ericsson's Marks have been infringed as a direct and proximate result of the acts of Defendants as set forth in this Complaint, in violation of Sony Ericsson's rights under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

**B.**     Adjudge that Defendants have violated the Uniform Deceptive Trade Practices Act under Georgia state law, O.C.G.A. §§ 10-1-370 through 10-1-375, and have engaged in unfair competition in violation of Georgia Code § 23-2-55 and the Common Law;

**C.**     Adjudge that Sony Ericsson's copyrighted work has been infringed as a direct and proximate result of the acts of Defendants as set forth in this Complaint, in violation of Sony Ericsson's rights under the Copyright Act, 17 U.S.C. § 101 <u>et seq</u>.;

**D.**     Adjudge that Defendants have breached the Agreement between the Parties;

**E.**     Order that Defendants and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns of Defendants, and all persons in active concert or participation therewith, be preliminarily and permanently enjoined from committing any further acts of trademark infringement, copyright infringement and unfair competition, and from using the Sony Ericsson Marks, the Infringing Marks, or any mark that is likely to cause consumer confusion and unfair competition with Sony Ericsson's Marks;

**F.**     Award Sony Ericsson its actual damages, trebled;

**G.**     Award Sony Ericsson Defendants' profits;

      **H.**     **Award Sony Ericsson statutory damages of not less than the maximum amount of $150,000.00 for Defendants' Copyright violation;**

      **I.**     **Award Sony Ericsson pre-judgment and post-judgment interest;**

      **J.**     **Award Sony Ericsson's attorneys' fees, taxable costs and disbursements incurred in this action;**

      **K.**     **Order all other relief as the Court deems just and proper.**

<u>JURY DEMAND</u>

    **Sony Ericsson respectfully demands a trial by jury of all matters to which it is entitled to a trial by jury pursuant to Fed. R. Civ. P. 38.**

Respectfully submitted,

Dated: February 4, 2011        By: _____/s/_____
Roger A. Colaizzi, Va. Bar #32651
Damon W.D. Wright, Va. Bar #40319
Christopher Scott Crook, Va. Bar #76636
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
Telephone (202) 344-4000
Fax (202) 344-8000
Email: racolaizzi@venable.com
      dwdwright@venable.com
      cscrook@venable.com

*Attorneys for Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of February, 2011, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of filing (NEF) to all attorneys registered to receive NEF's in this case.


$$\underline{\hspace{2cm} /s/ \hspace{2cm}}$$
Christopher Scott Crook, Va. Bar # 76636
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
Telephone (202) 344-4000
Fax (202) 344-8300
Email: cscrook@venable.com

*Attorney for Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc.*